United States District Court
District of Massachusetts

|                                      |   |                        |
|--------------------------------------|---|------------------------|
| SCOTT S. MAIFELD,                    | ) |                        |
| Debtor-Appellant,                    | ) |                        |
| v.                                   | ) | Bankruptcy Appeal No.  |
|                                      | ) | 13-12406-NMG           |
| WEST COAST LIFE INSURANCE COMPANY,   | ) |                        |
| Creditor-Appellee.                   | ) |                        |

**MEMORANDUM & ORDER**

**GORTON, J.**

In this case, the Court is asked to decide whether the bankruptcy estate of debtor Scott S. Maifeld ("Maifeld") is entitled to the proceeds of a life insurance policy ("the policy") on his mother, Gloria Vant ("Vant"), that was issued by West Coast Life Insurance Company ("West Coast").

Because the Bankruptcy Court found that (1) the policy had lapsed according to its unambiguous terms prior to Vant's death and (2) that West Coast's contract was with Vant, not Maifeld, it allowed West Coast's motion to dismiss both counts of Maifeld's complaint in his adversary proceeding.

In his appeal of that decision to this Court, Maifeld proffers several arguments to circumvent the adverse ruling but they fall short of persuading this Court that it was erroneous.

Accordingly, this Court will affirm the Bankruptcy Court's dismissal of Maifeld's complaint.

I.  **Background**

The Court briefly recites the relevant facts of this case. Although the parties quibble about the state of the record and which facts may be considered at this juncture, the Court perceives no material dispute of fact in the subject proceeding.

A.  **Factual Background**

In August, 2001, West Coast issued to Vant a term life insurance policy in the amount of $100,000 on which the primary beneficiary was her husband, Stuart L. Vant. The secondary beneficiary was her son, Maifeld. The policy stated that West Coast would pay the death benefit to the beneficiary upon "proof that the insured died while this policy was in force."

The policy also stated on its first page that it was a

> legal contract between the policy owner and [West Coast] [and that premiums] must be paid when due to avoid loss of coverage or reduction of benefits.

The policy contained a 31-day grace period, specifying that it would "continue in force during this period" but the past-due premium would be deducted from any death benefit. If the premium was not paid "when due or within the grace period, [the] policy...will lapse as of the due date of the unpaid premium."

The policy contained a provision that allowed the policy holder the option of having unpaid premiums paid by an

-2-

"automatic policy loan" from the policy's net cash value. The automatic loan option, however, had to have been "chosen in the application or by written request before the end of the grace period for an unpaid premium." Vant did not select that option during the time she held the policy.

At some time prior to 2011, Maifeld was appointed guardian of Vant and her estate. He also became the policy's primary beneficiary.

On July 18, 2011, West Coast sent Vant a "First Notice of Payment Due" to inform her that a quarterly premium payment of $4,423 was due on or before August 7. On August 28, West Coast sent her a "Second Notice of Payment Due" with respect to the now-past due quarterly premium. The Second Notice explicitly referred to the policy's 31-day grace period, stating that

> [t]o make sure you have continuous coverage, we must receive your payment by 09/07/2011. If we do not receive your premium by then, your policy will lapse.

On September 10, 2011, Vant died. On September 18, 2011 apparently unaware of Vant's death, West Coast issued a "Last Notice of Payment Due" which stated that

> [y]our grace period has expired.... If your policy has lapsed, you may reinstate without having to provide evidence of insurability if we receive your payment by 10/08/2011, during the insured's lifetime.

On November 8, 2011, Maifeld submitted a claim for death benefits under the policy. One month later, West Coast denied

the claim, stating that the policy had lapsed on September 7, 2011, 31 days after the premium was due. Because Vant had not applied for reinstatement prior to her death nor chosen the automatic loan option, the insurer explained that no exception could be made.

B.   **Procedural History**

On August 23, 2011, approximately two weeks before his mother's death, Maifeld filed a Chapter 13 bankruptcy petition on his own behalf. On November 9, 2012, he filed an adversary proceeding against West Coast, asserting his right, as the beneficiary, to the proceeds of the life insurance policy which he claims was still in force as of the time of Vant's death.

Specifically, Maifeld alleged that West Coast improperly denied his claim for benefits under M.G.L. c. 176D and c. 93A because the policy had not lapsed (Count I) and West Coast improperly attempted to collect a "pre-petition debt" by sending Vant a bill for the unpaid premium after Maifeld's bankruptcy petition was filed (Count II).

In January, 2013, West Coast filed a motion to dismiss both counts for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted. In March, 2013, the bankruptcy court denied the motion with respect to subject matter jurisdiction but allowed the motion to dismiss Count II. Thereafter, upon securing consent of the parties to

enter final judgment with respect to Count I, the bankruptcy court issued a Memorandum of Decision allowing the motion to dismiss Count I and Maifeld timely filed a notice of appeal with this Court.

## II. Analysis

United States district courts have jurisdiction to hear appeals from final orders of bankruptcy courts. 28 U.S.C. § 158. In reviewing an appeal from an order of a bankruptcy court, a district court reviews de novo conclusions of law but must accept the bankruptcy judge's findings of fact unless they are clearly erroneous. Berliner v. Pappalardo (In re Sullivan), 674 F.3d 65, 70 (1st Cir. 2012). Clear error means a finding must be more than just "probably wrong"; "it must prompt a strong, unyielding belief, based on the whole of the record, that the judge made a mistake." In re O'Donnell, 728 F.3d 41, 45 (1st Cir. 2013).

### A. West Coast did not engage in unfair settlement practices when it denied Maifeld's claim for death benefits under the policy

In Count I, Maifeld contends that West Coast's denial of his claim was an unfair settlement practice under M.G.L. c. 176D, § 3(9). In essence, Maifeld asserts that the denial of his claim for death benefits was improper because the policy had not, in fact, lapsed. Accordingly, the question before this

-5-

Court is whether the policy was in force as of September 10, 2011, the date on which Vant, the policy holder, died.

Vant's quarterly premium was due on or before August 7, 2011. West Coast sent notices to Vant on July 18 and August 28 alerting her to that fact, explicitly directing her attention to the applicable 31-day grace period set to expire on September 7, 2011. The insurer's second notice stated unambiguously that if it did "not receive [Vant's] premium by [September 7, 2011], [her] policy will lapse." Because West Coast did not receive the premium within the clearly stated deadline, Vant's life insurance policy lapsed before she died.

In response to those facts, Maifeld musters three arguments. First, he claims that Massachusetts law mandates a three-month grace period after a life insurance premium is due, meaning that the actual date on which the policy lapsed was November 7, 2011, after his mother's death.

The three-month period to which Maifeld refers is, however, simply a default rule, applicable "unless" an insurer provides notice of lapse according to certain procedures not at issue here. M.G.L. c. 175, § 110B. In this case, West Coast followed the prescribed procedures, so that "the lapse of the policy" occurred "as provided in the policy." See id. Because the policy provided for a 31-day grace period which expired on September 7, 2011, § 110B is unavailing to Maifeld.

Second, Maifeld avers that he had the right to reinstate the policy after Vant's death according to the terms of the policy. The Last Notice of Payment Due, sent after Vant's death on September 18, 2011, stated that "you may reinstate...if we receive your payment by 10/08/2011, during the insured's lifetime."

While the policy does provide a right to reinstate by paying past due premiums, it is permitted only "during the insured's lifetime." The effort by Maifeld to reinstate the policy after receiving the Last Notice came after Vant's death, not during her lifetime.

Finally, despite failing to allege in the complaint that he had selected the automatic policy loan option, Maifeld contends that he should be allowed to conduct discovery on that topic. The Court, however, again agrees with the bankruptcy court which emphasized that a complaint is evaluated on the allegations it contains, "not by those it might later contain." In re Maifeld, 495 B.F. 127, 134 (Bkrtcy. D. Mass. 2013). Therefore, that argument is also insufficient.

**B.   West Coast did not violate the automatic stay by cancelling the policy after Maifeld filed his bankruptcy petition**

In Count 2, Maifeld avers that cancelling the insurance policy after he filed his bankruptcy petition was a violation of the automatic stay. The focal point of this dispute is whether

the fact that Maifeld had paid the premium on his mother's life insurance policy renders the policy a contract between him and West Coast. Maifeld contends that it does while West Coast demurs. The bankruptcy court quite properly gave short shrift to that argument.

Upon the filing of a bankruptcy petition, federal law effects an automatic stay of all actions against the debtor or that involve the debtor's property. 11 U.S.C. § 362(a)(3), (6). The automatic stay is a powerful instrument to facilitate the reorganization of a debtor's estate in bankruptcy but it applies only to his interests

> that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition.

11 U.S.C. § 541(a)(5).

Unfortunately for Maifeld, the policy stated that only the "policy owner," Vant, not Maifeld, had any rights under it. Maifeld's roles as Vant's guardian and as the policy's beneficiary do not supersede that provision. See M.G.L. c. 190B, § 5-309(a); Gheed v. Noon, 415 Mass. 498, 500 (1993).

Therefore, as a matter of law, Vant's life insurance policy was not part of Maifeld's bankruptcy estate and the bankruptcy

court correctly found that West Coast's actions did not violate the automatic stay.[1]

**ORDER**

In accordance with the foregoing, the orders of the Bankruptcy Court are **AFFIRMED** and the bankruptcy appeal (Docket No. 1) is **DISMISSED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated September 5, 2014

---

[1] Because the Court finds the policy was with Vant, not Maifeld, it need not decide whether a creditor can violate the automatic stay through inaction by allowing a contract to lapse according to its own terms nor whether 11 U.S.C. § 108(b) tolled the policy's grace period.